Case 11-1959, Jerry VanDiver v. Prison Health Services Inc, et al. Oral argument, 15 minutes per side. Mr. Plaintiff Appellant. Good morning, Your Honors. I'd like to reserve 4 minutes for rebuttal. Fine. May it please the Court, Elizabeth Prelogger, Court-Appointed Counsel for Plaintiff Appellant Jerry VanDiver. Mr. VanDiver should have been permitted to proceed informopoperous in this case because he alleged the who, why, when, what, and where of how defendants' continued adherence to an unconstitutional policy threatened him with future injury. Applying the proper legal framework to his claims, that is recognizing that he only needed to satisfy ordinary notice pleading standards and that his pro se complaint was entitled to a liberal rule of construction, he adequately alleged imminent danger of serious physical injury. In ruling to the contrary, the District Court below, and now Dr. Pandya on appeal, have characterized Mr. VanDiver's allegations as conclusory, but they've never explained exactly what was missing that failed to give fair notice of the substance of his claims of imminent danger. Well, I mean, you would agree, right, that if a defendant came in and just simply, or I'm sorry, a plaintiff in one of these cases, came in and simply recited the elements of a claim without any factual detail, I mean, that wouldn't be enough, right? That's correct, Your Honor. I believe that it wouldn't be sufficient. We don't forgive that kind of conclusory, even in a pro se case. And that would just be a boilerplate assertion, I am in imminent danger. That would be the legal conclusion. Right. You know, they failed to give me required medical care. I'm in imminent danger of physical harm. Therefore, Eighth Amendment, that wouldn't do it. Well, here we have so much more than that, Your Honor, because what Mr. VanDiver did, and again, he was drafting this complaint pro se, is he provided specific details about how he had been denied care in the past and how he expected that denial to continue in the future and reasonably expected it. But why does this show imminent danger? His conditions are hepatitis C and diabetes. In the past, he's had foot amputations. Why is he in imminent danger in the future? Because the defendants are continuing to adhere to the unconstitutional policy of denying necessary care and specifically specialist referrals based on this idea of profit motives. And if you look at what happened in this case, it was actually on a fairly compressed timeline, Your Honor. Mr. VanDiver, in May 2010, started complaining about his foot ulcer and started seeking that specialist treatment that he believed was necessary. By the next year, not even a year later, March 2011, part of his foot had been amputated because he wasn't receiving the care he needed. And as this court previously recognized in the Vass Binder case, that constitutes imminent danger. The court specifically said that the failure to receive necessary care for potentially life-threatening illnesses, such as those suffered by Mr. VanDiver himself, who was a party in that case, clearly constitutes imminent danger. So in that particular case, which involves your client, that's an unpublished opinion, right? So we are free to decide whether the standards that that case set up were appropriate standards or not in this case. That's true, Your Honor. But that case is persuasive, and it also accords with the decision of numerous other circuits to consider this issue. So we have the D.C. Circuit in the Ebraham case. We have the 11th Circuit in the Brown case. The 7th Circuit in the C.R. Polini case. All of those involved strikingly similar factual circumstances where the plaintiff had a serious medical condition, hepatitis in most of the cases, and wasn't receiving adequate health care. And each of those courts down the line, just like this court in the Vass Binder case, recognized that that qualified as imminent danger of serious physical injury. And I think rightly so, as the 7th Circuit has recognized in the Lewis v. Sullivan case, the imminence requirement has to be interpreted reasonably to avoid creating the kind of catch-22 where your claim will always be either too early or too late. So it's not the case that you need to run to court as you're running from your attackers to get your claim in through the threshold. Rather, the 7th Circuit said that if the imminence requirement were interpreted too stringently, it would become a cruel joke on prisoners because they could never actually show that the harm was just about to occur. In fact, it would be about to be over. Is there a way to define imminence in terms of time? So I'm just throwing out an idea. One year. If the harm is likely to occur in one year, we could say that's imminent. But if it's more than a year, then it's not imminent. It's future. Courts have resisted defining it in that way, Your Honor, I think because they've recognized that it risks arbitrarily cutting off claims that might be on the verge of happening. And they've also recognized that this works in tandem with the exhaustion requirement in the PLRA. And so before a prisoner can even come to court, he has to run through that mandatory exhaustion process. And so courts haven't defined it in terms of a particular time frame. And the 7th Circuit in the Lewis case specifically considered Your Honor's proposal about a week, a month, a year, and said, you know, in fact, this will crystallize through case-by-case application and we shouldn't apply a rigid rule here. Could you address the argument that there should be a nexus requirement between the threatened injury and the claims that the plaintiff is making? Sure, Your Honor. And at the outset, I'd just like to emphasize that the court, of course, doesn't even need to resolve that issue here because if there is a nexus requirement, Mr. Van Dyver's complaint easily satisfies it. But it's a difficult question, I think, of statutory interpretation that's divided the Third and the Second Circuits. And I think the problem comes from the fact that if you look at the statutory language itself in 1915G, there doesn't seem to be any required link between being in imminent danger and bringing your civil action. But, of course, Congress's purpose seems to have been to provide a judicial forum for plaintiffs who are seeking redress for that imminent danger. Again, here, we have a situation where Mr. Van Dyver's claim of deliberate indifference stems directly from the unconstitutional policy that also threatens him with imminent danger of future injury. And so if there were a nexus requirement, it would satisfy what the Second Circuit has characterized as a traceability and redressability requirement. Would the nexus requirement need to apply to each defendant? No, Your Honor. No court has held that, and rightly so, because if you look at the statutory language, Congress authorized plaintiffs, if they were in imminent danger, to bring a civil action. And that term has a well-settled meaning in the case law. This court, in fact, in Taylor v. First Medical Management, Judge Stranch, I believe you were on the panel, just said, action as it is normally used within the pleading context refers to the entire case or suit filed by a plaintiff. That was actually interpreting 1915G, the second use of action there, with respect to what constitutes a strike. And another common-sense example, think about the removal statute, 28 U.S.C. Section 1441. It's titled Removal of Civil Actions. And no court has found that that would mean leaving some claims in state court and removing others to federal court. The entire case goes. But would that permit your client to raise a claim regarding something that has nothing to do with his health situation, such as the prison has deprived him of some of his property? The imminent danger exception wouldn't prevent that, Your Honor. But I believe ordinary joinder rules would. So Rule 20 of the Federal Rules of Civil Procedure governs joinder of unrelated defendants, for example, and says that the charges against those defendants have to arise out of the same transaction or occurrence and also involve common questions of law or fact. And that would be the appropriate way to guard against an expansive suit where claims are improperly joined because they're so unrelated that they have no common nucleus of fact. Does that joinder rule, and it's been a while, I mean, does that speak to joinder of defendants or claims? Rule 20 speaks to joinder of defendants, Your Honor. I believe it's Rule 18. So if it were the same defendants, but these wildly disparate claims. Yes, Your Honor, and that promotes the efficiency purposes that permit joinder of those claims in the first place. The reason we allow joinder of those claims is because it's efficient for courts and for the parties to bring a single defendant and every claim against him into one suit at one time. But it would potentially cut against the purposes in 1915G, right? I mean, not to trivialize at all what's going on here, but if you had a similar claim and the guy also makes one of these claims that's been sort of lampooned in the law review stuff, you know, throws in a scoop of ice cream claim, I mean, that is then eroding the purpose of 1915G, but would be permissible in your view? It would be permissible, and, Your Honor, I don't think it would erode the purpose because the point of 1915G is to reduce the burden on district courts. Congress was very clear about that. And if you were to require a claim-by-claim or defendant-by-defendant nexus, that would impose a burden on district courts to parse the complaint, go with a fine-tooth comb through every allegation in it, and make sure that there's an allegation of imminent danger that connects up with each and every one of those claims, all for a single statutory provision that governs when the filing fee gets paid. It's all about whether the filing fee gets paid. Kind of like procedural error in habeas cases, right? More trouble. Because really this is just saying that he gets the... If he were to prevail, he would get the benefit of IFP status, which delays his filing fee. Exactly. And lets him spread it over a period of time. Yes, so he's still on the hook for the fee. He just pays it in installments rather than up front at once. But if we were to... You raise an interesting Fifth Circuit unpublished case argument that our acceptance in the Sixth Circuit of the IFP status for this very appeal contradicts the decision of the district court below. So it's looking at exactly the same issue on the same standard. So is your claim that the cases now moot as soon as we agree to IFP status? Your Honor, I think that it is persuasive evidence that he is entitled to proceed IFP because one judge of this court is already determined to that in granting him IFP status on appeal. Of course, that wouldn't formally bind this panel because it was an unpublished decision permitting him to proceed IFP on appeal. But yes, I think the Fifth Circuit was exactly right. Anytime a plaintiff is permitted to proceed IFP on appeal contrary to the district court's determination, that's an implicit determination that he's in imminent danger of serious physical injury because it's made on the exact same basis of the complaint that was examined below. And I think here that decision was absolutely right because Mr. Van Diver included substantial detailed factual allegations about what had happened to him in the past  if defendants continue to adhere to this unconstitutional clause. So are we procedurally wasting our time? Is your suggestion that we should resolve these if we accept it for IFP status before this court? Once we accept it, that is effectively moving the question and we should short-circuit those two procedural steps? Or do you think we have to play out the whole thing? Certainly, Your Honor, as a matter of case management, I think it would be more efficient to decide these issues at an earlier stage at the perhaps IFP determination on appeal. And that would also prevent the problem we have here where this case has been pending for years. Mr. Van Diver hasn't had his judicial forum yet because he continues to remain tied up in this preliminary procedure, an outright screening device. This court could easily screen it as well. And yes, I think that that would be a good idea. Thank you. May I please the court? Kevin Heimoff from the Michigan AG's office on behalf of the unserved defendant, Dr. Pania. And I do appreciate this court allowing me the opportunity to address what is usually only heard from one side in these type of appeals. First, addressing that nexus argument, I believe that is a decision that this case need not decide in this case. I don't think this is really the right case for that. After looking at the reply brief, the argument, this is not a case where there's an additional First Amendment retaliation or other non-danger type claims. This is clearly a 100% medical type claim. So I believe that there's enough on this court's plate as far as what constitutes imminent danger that although the nexus issue is important, it should be, I believe, safe for a case where clearly there is that situation clearly before the court. Just one clarification just for the scope of what you're arguing. I mean, I take it from your brief that you are not, with the exception of the claim against Dr. Pania, you're not even defending the district court's decision with respect to everybody else. It's really a unique decision. I really have no client. It's an unserved defendant. The court invites our office to brief these people. Was Mr. Pania served or Dr. Pania served? No, no. So you've chosen to defend the judgment as to him but not as to everybody else. Is that fair? Right, because just the way the prison system works in Michigan, those wouldn't be the people I'd be representing anyways. They're private practitioners. PHS, Prison Health Services, they have their own private counsel. This is just kind of the system that we have. So you're not able to defend the other defendants? I guess in a hypothetical sense I am because really the same arguments I'm making for Dr. Pania really would be the same for them. But I'm appearing only on behalf of Dr. Pania. I see, you haven't been retained by them. Exactly. And they've otherwise not shown up. I guess they could have, right? They have not because often these cases, we don't even know they exist because it's a screening order. It never gets to a client who then goes to the next step of requesting representation from our office. But sometimes we get a call from this court saying, do you wish to participate in the appeal? And often we accept so that you hear from two sides. Dr. Pania, is he an employee of the State of Michigan? Yes, he is. And that's why I'm here today. Well, that's helpful. Thank you. So regarding what I believe is the real issue of this case, any one of this panel may disagree with exactly how the district court operated. But we are under an abuse of discretion standard. I think that's something that I should emphasize in that. You may think that this did meet the imminent danger exception. But the issue is, did the district court make a clear error of judgment? Did it clearly misapply the law or the facts? Well, I mean, any legal error is an abuse of discretion, right? It needn't be clear. If we just conclude that he made a legal mistake of law, that's an abuse of discretion. Right. But it clearly is not de novo either. You have to look at what the district court did, not just what this court believes would have been the right result. But why isn't this an imminent threat of serious injury that's alleged sufficiently in a pro se complaint? Well, we need to go to basic definition. The district court cited, it's not defined in the statute, so we have to look elsewhere. Just Black's Law Dictionary, it's more of an immediate type of harm. Now, I agree with my opponent that we don't get to the situation where imminent only means the guard has his hand cocked back and that it's immediate because you never get to the court on time. But there has to be some middle ground between it may somehow possibly happen in the future versus it's happening right now and it's too late. Well, how would you define imminent? So I threw out the idea of one year, that if the injury is likely to occur in one year, it's sufficiently imminent for purposes of IFP status. I don't think you can put a date on it, but one suggestion I have is that in following the rules of federal procedure, you have a mechanism of asking for a TRO, filing for preliminary injunctive relief. And so my view on this is that if this is so important that I'm at imminent risk of harm, this is something that is something where a TRO or some injunctive relief should have to be filed because most people who are up against three strikes, they know how the system works. Here we are over two years afterwards. They know that if you need immediate relief, you have to file a motion. So my view is that if it's something that is TRO or preliminary injunction worthy, then that is more closely looking at its imminent risk. Has any court taken that approach? No. I haven't seen anything to that because it's really difficult to find any definition of imminent danger as it relates to this specific statute. But clearly, it seems to defy the basic meaning of imminent risk if you allow a case to go through the normal course of events. He gets to trial, he gets a judgment at trial, and if that's two or three years later, it just seems to defy common sense that that was an imminent type of risk. Well, I mean, surely Congress wasn't meaning to exclude a prisoner's ability to bring suit based on progressive medical conditions that end up with very bad outcomes, right? That's correct. So you would agree with that? And, you know, so maybe from one day to the next or even one week to the next, not that much of a change, but, you know, at some point, you're going to turn a corner and you just don't know when it is or even exactly when it actually happens. But, you know, then you're taking a foot off, right? And so how would you deal with that? I guess what you describe doesn't sound like imminent, though. So you're out of luck if you have this or if you have lung cancer or emphysema or something? Under a clear reading of the statute, that's what it sounds like. And, again, it's where we're trying to grasp this concept of imminent. And, yes, some chronic conditions, you could have an imminent risk of harm, but some, if it's just this something's bad, probably going to happen in the future, that is not really any clear, you know, any commonly accepted definition of imminent. I mean, that's what Congress wrote. They could have wrote what you asked for. Well, so an example that would satisfy you would be somebody who has acute appendicitis, because you've got to get the appendix out within hours or days, but not something like emphysema or tuberculosis, which you don't really know when the person is going to suffer a grievous event. That sounds much more close to imminent, and that's a situation where the prisoner plaintiff could quickly file a complaint, ask for a TRO. You know, a lot of judges, if they see this, I'm going to die if you don't do something within a week, a lot of judges, they are going to hold a hearing on that, and that would be a great example of what imminent risk would be. So is there a court that you would point us to or an opinion that takes that position? No, I can't. I can't. So I'm just... What about the fact that Van Diver here has already had parts of both of his feet amputated, suggesting that in the past, his diabetes and whatever else have led to serious physical harm? Should that be factored in? I believe this should be part of the complete analysis, but in a way it's a distraction because I think he is continuing to focus really on, you know, the main gist of the complaint is those past harm. He wants to be compensated for those past harms. I thought that he wanted to get special shoes and appropriate treatment for somebody who has serious diabetes issues. That may be part of the complaint. My view of the complaint is that certainly the gravamen of it is that he's asking for compensation for past harm. He's asking for medical care, isn't he? That's what he's asking for. Again, it does seem pretty vague as far as the timeline of it. And again, it was Congress that chose the word imminent. So I think we're focusing on that word. Why do you consider it vague when he goes through his grievance procedure steps? That's a fairly clearly laid out time frame, isn't it? And an explanation as to, you know, here's the grievance step, here's what I'm grieving. You're not giving me care. I have an ulcer. By the time you get back to me, I can't even get my feet in shoes. By the next time I see you, I can't even get them in the galoshes you want to give me. And now a portion of my foot has to be amputated. I don't know how much clearer one could be. Well, if that's only in the grievances, I don't think it really relates to the IFP because... Well, that's what he put in his affidavit to support the claims. Okay, and I think really the document that the Court's looking at for IFP is the complaint itself because if we're looking under the pleading standards of Ashcroft and Twomby, you're looking not at extraneous filings, not even attached to the complaint, but it's separate documents. When was the affidavit filed? Excuse me? When was the affidavit filed? Was it filed the same day as the complaint? No, I believe it was filed after, and I'm sure my opponent will correct me if I'm wrong, but I know it was a distinct... I thought that it may have been a distinct filing on the docket, but I thought that it may have... They're both filed on June 2. Okay. They're both filed on June 2. I don't believe whether a prisoner filing on the same day... I think usually the district court clerk is the one who decides exactly how to file it because prisoners are not allowed to mess with the district court filing system. Right, but regardless of that, it's not part of the complaint. It isn't referred to in the complaint, I'm asking. I don't believe so. Again, I could be wrong on that. I understand it's a verified complaint. Yeah. And so the verified portion of the complaint is the attachment that was filed simultaneously. Okay, okay. My interpretation was that those are different documents that he's trying to add to the complaint, and my reading of... But if he's doing it on the same day, it's different than if he says, oops, a year later, I better come up with this. Right, yeah, that's correct. But again, my interpretation of this court's... You know, earlier, albeit unpublished decision in the other Van Diver cases, that really what we're looking at is the complaint because it's a pleading standard. You plead in a complaint, not in even contemporarily filed motions. Well, let's say you're wrong about that. Okay. Before the district... I'm just trying to understand what was before Judge Yonker. So before Judge Yonker, we have the complaint, we have his imminent danger affidavit, right? Correct. And then would you agree that we have these appendices, A through D, I think it was? Looks like those were attached to the affidavit. So he filed the complaint and then the affidavit with those. Okay, so those all got filed the same day? That is correct. Okay. I was a little just confused about when all that stuff landed. Right, so those did get filed, right? I mean, if all of that stuff is there, particularly the appendices, you've got a problem, don't you? I mean, are you really saying that he doesn't allege anything that's like a current serious medical problem? I think he does in those, and I think it's an open question, you know, what does the district court look at? I mean, so far we have the unpublished case, they look at the complaint. Certainly, if this court, you know, were to make a rule that you can file a motion further alleging, you know, the immunogenicity. But we don't have to do that here because the affidavit is filed the exact same day as the complaint. So we don't have to deal with your possible other situation of a year later filing the affidavit. Correct. We can say that a complaint with a contemporaneous affidavit that refers to the complaint being filed simultaneously and that has exhibits that all of that is within the complaint. After all, this guy is a pro se prisoner who may not know civil procedure, he may not have taken civil procedure in law school. And so, you know, my only answer to that is I believe, you know, it sort of threw me a little bit that we're looking at two distinctly docketed entries. I'm looking at the previous decision that you look at the complaint, and that's what I looked at when I made my argument. So if this court's interpreting the affidavit as being part of the complaint, then that's what it is. I just interpret it differently because they're docketed separately. That's all. Okay. Okay. Thank you. Unless there's any further questions, I only have 20 seconds. Thank you. Thanks. Thank you for coming. Your Honor, just to clarify, Mr. Van Diver did file all of these documents on the same day, and I would direct your Honor's attention to record ID page number four, where he specifically in the case part of his complaint. I'd also direct your Honor's attention to the Supreme Court's decision in Denton v. Fernandez. It's 504 U.S. 25, where the Supreme Court itself, at a PLRA screening stage, referred to affidavits that had been submitted alongside a complaint. And so, absolutely, those documents are in the record and should be considered. Do you think the District Court just somehow overlooked those appendices? Well, Your Honor, he specifically referred to them because part of his claim had been seen by medical professionals on numerous occasions, and that came from the grievance documents, which established that he was seeing medical providers regularly. But I think the District Court fundamentally misunderstood the nature of the claim, because the allegation here was never that Mr. Van Diver was being completely denied care. Rather, he was alleging that the care he received was inadequate. And that is a well-established claim of deliberate indifference, and it can also amount to imminent danger, because it's not enough to simply trot out a prisoner in front of a doctor if that doctor's medical judgment won't be followed based on an unconstitutional policy of prioritizing profits. I see in the complaint itself, it says, see plaintiff attached to affidavit showing imminent danger of serious physical danger. So the complaint itself did refer to the affidavit. But what about your opponent's argument that if it's really imminent danger, the prisoner should ask for a TRO or a preliminary injunction? I think there are two problems with that, Your Honor. One is these prisoners are usually pro se. They don't necessarily know the correct legal framework or aren't in a position to immediately get papers together and go to court seeking that relief. And as well, I think that that would ignore the mandatory exhaustion process that's part of the PLRA. And courts have interpreted that requirement fairly stringently, don't normally let prisoners off the hook with that. And so I think that would present a practical difficulty for a prisoner getting into court at an immediate. Well, but theoretically they have exhausted their claims through the prison grievance system before they filed their complaint, theoretically. Yes, and that takes time. And that's what would make it difficult to try and do this with a preliminary injunction standard. But I think actually that's standard. But why not? I mean, on the surface at least, it sounds like he has a good idea that if it really is something that's imminent, a prisoner would be wise to go for a TRO or a preliminary injunction at the same time as filing the complaint because the prisoner then could get immediate judicial action instead of having a case dragged for years as this one has already. Absolutely, Your Honor. I think that if a prisoner did do that, then that should be considered. But I don't think there's any requirement in the imminent danger exception for a prisoner to do that in order to get through this gateway. And no court has interpreted it that way. No court has held that imminent danger requires first seeking a TRO or a preliminary injunction. Instead, they've adopted this sensible reading of the requirement on kind of a case-by-case basis that recognizes that prisoners can't have their access to a judicial forum cut off simply because the danger isn't expected to occur within the next day or week. And, again, I'd emphasize here the timeframe we're looking at, that from May of 2010, about eight months later, nine months later, in March of 2011, part of Mr. Van Diver's foot was being amputated because he had not received the care he needed pursuant to this unconstitutional policy. The nature of this case, I guess the nature of your client's condition, I suppose, might give us an occasion to write about what imminence means or imminent means within Section 1915G. How would you define imminent? I would define it the same way that the Eighth and the Ninth Circuits have, Your Honor. In Andrews v. Cervantes, the Ninth Circuit defined it as an ongoing danger, and it said that the Eighth Circuit had defined it exactly the same way in the Ashley v. Dilworth case. Two circuits have considered this, and they have said that when you have this kind of past harm coupled with a continuing policy and a continuing reason to expect that the harm will be ongoing, then that qualifies for the imminent danger exception. And I think that that's a sensible way to interpret the statutory term, and if this Court were inclined to provide a comprehensive definition, I would follow the lead of those other circuits. And I would respectfully ask this Court to reverse the District Court's determination denying Mr. Van Diver leave to proceed in form of papyrus. Thank you. And thank you both for your argument. I see that you're arguing pro bono, and we want to thank you for your service to your client and to the Court. And, Mr. Himelbaugh, thank you for arguing on behalf of your client, and both of you have helped us a lot in your arguments today. Thank you. Thanks. The case will be submitted. Would the clerk call the next case, please?